IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **LABRINA BARBER**, on behalf of herself and others similarly situated, | ) | Case No. 1:23-cv-00208-JRS-MJD |
| | ) | |
| | ) | Judge James R. Sweeney |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Mark J. Dinsmore |
| vs. | ) | |
| | ) | **JOINT MOTION FOR APPROVAL OF** |
| **PARK 100 FOODS INC.,** | ) | **FLSA SETTLEMENT AND DISMISSAL** |
| | ) | **WITH PREJUDICE** |
| Defendant. | ) | |

Plaintiff Labrina Barber ("Plaintiff") and Defendant Park 100 Foods Inc. ("Defendant")

respectfully request that this Honorable Court:

1.  Find that Plaintiff is similarly situated to the Opt-In Plaintiffs that joined this case;

2.  Approve the Parties' Collective Action Settlement Agreement and Release ("Agreement"), attached as Exhibit 1, as a final, fair, reasonable, adequate and binding release of claims;

3.  Approve the requested Service Award to Representative Plaintiff;

4.  Approve Plaintiffs' request for attorneys' fees and costs; and

5.  Dismiss this case with prejudice.

In support of this Motion, the Parties state as follows:

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed this case as a collective action on February 2, 2023, alleging that Defendant

violated the Fair Labor Standards Act ("FLSA") by failing to compensate properly Defendant's

food production employees for time spent engaging in pre-shift and post-shift work. (ECF #1).

Defendant filed its Answer on March 29, 2023, in which it denied Plaintiff's material allegations,

and denied that it violated the FLSA. (ECF #12). Defendant continues to deny any liability to Plaintiff or the putative collective.

Plaintiff filed an unopposed Motion for Conditional Certification and Notice Pursuant to the Fair Labor Standards Act on April 28, 2023. (ECF #21). The Court granted the Motion on May 31, 2023, and authorized notice to be sent to members of the putative collective, defined as:

> All current and former hourly production employees of Park 100 Foods Inc.'s Tipton, Indiana facility who were involved in the manufacturing, packaging, or handling of food or food products, who donned and doffed smocks and hairnets as a regular part of their jobs, and who worked 40 or more hours in a workweek at any time from three (3) years preceding [May 31, 2023] through the final disposition of this matter.

(ECF #25). Notice was mailed to approximately 854 members of the putative collective on June 29, 2023. (Declaration of Jeffrey J. Moyle ("Moyle Dec."), attached as Exhibit 2, at ¶ 8). Members of the Collective had until August 29, 2023 to join the case. A total of 74 members of the collective opted to join this case. (*Id.*).

Prior to the close of the opt-in period, the Parties engaged in some written discovery. (Moyle Dec. at ¶ 9). Specifically, Plaintiff responded to interrogatories and requests for production of documents, and Defendant produced relevant policies, procedures, and other similar information. (*Id.*).

After the close of the notice period, Defendant's counsel provided Plaintiff time records and payroll data for members of the Collective that joined the case. (Moyle Dec. at ¶ 10). From this data, Plaintiff's Counsel constructed a potential damages model from that data, and the Parties agreed to engage in settlement discussions. (*Id.*). After exchanging several settlement proposals, the Parties were able to reach an agreement to settle this matter for the Collective. (*Id.*).

As set forth in the Settlement Agreement and Release attached as Exhibit 1, the gross settlement amount is $35,000.00, which will cover: (a) all individual payments to Collective

members; (b) a service award to Plaintiff for her services in bringing and prosecuting this Action; and (c) Plaintiffs' Counsel's attorney fees and expenses. The settlement includes the 74 members of the Collective that joined this case. Collective members will receive a monetary payment calculated proportionately to the number of weeks they worked for Defendant during the applicable time period in comparison to the total weeks worked by all Collective members during that time period. In exchange for these payments, Collective members will release all any and all claims against Defendant under the FLSA and any and all applicable state and local wage and hour laws, regulations, and ordinances up to the date on which the Court grants approval of the settlement. Anyone who did not opt into this suit will not have their rights affected in any way.

## II.   THE FLSA SETTLEMENT SHOULD BE APPROVED.

### A.   The Standard For Approval Of An FLSA Settlement

"FLSA collective action settlement agreements require judicial approval." *Gallant v. Arrow Consultation Servs.*, No. 1:19-cv-00925-SEB-MPB, 2020 U.S. Dist. LEXIS 77857, at *4-5 (S.D. Ind. May 4, 2020). "'A one-step settlement approval process is appropriate' in FLSA collective actions." *Id.* (quoting *Knox v. Jones Grp.*, 15-cv-1738 SEB-TAB, 2017 U.S. Dist. LEXIS 146049, at *2 (S.D. Ind. Aug. 31, 2017)). "In other words, the Court can review and approve the settlement agreement without holding a final fairness hearing or adhering to the other requirements contained in Rule 23 of the Federal Rules of Civil Procedure." *Id.* (quoting *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 U.S. Dist. LEXIS 118174, at *2 (N.D. Ind. Jan. 4, 2019)).

"Normally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further

relief after protracted and expensive litigation." *Gallant*, 2020 U.S. Dist. LEXIS 77857, at *5 (citations omitted). "Courts are required to determine the fairness of a collective action settlement agreement by assessing 'whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.*

Furthermore, where, as here, "the parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective action settlement." *Gallant*, 2020 U.S. Dist. LEXIS 77857, at *3 (citing *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010)).

**B.      The Members of the Conditionally Certified Collective Are Similarly Situated**

Final certification of a collective is proper where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies," and the defendants' "defenses would apply to all Plaintiffs." *Gallant*, 2020 U.S. Dist. LEXIS 77857, at *4 (quoting *Burkholder*, 750 F. Supp. 2d at 994).

Plaintiff's allegation in this case is that she and other food production employees were not compensated for time spent donning sanitary clothing or washing their hands prior to the start of their scheduled shift, or for doffing the sanitary clothing after the end of their shift, and that these practices caused food production employees not to be paid all of the overtime compensation to which they were entitled. Having conducted written discovery, the Parties assert that final certification of the collective for purposes of approving the settlement is warranted. Defendant's corporate policies and procedures require food production employees to wear sanitary clothing, such as smocks and hairnets, and to wash their hands prior to the start of their shift. Thus, there is evidence that the conditionally-certified collective in this case is similarly situated, insofar as their

4

jobs all involve the manufacturing, packaging, or handling of food or food products, and each is required to don sanitary clothing and wash their hands prior to the start of their shift and doff their sanitary clothing after the end of their shift.

Furthermore, Defendant's defenses would apply to all Plaintiffs. Defendant contends that the time food production employees spend donning and doffing is not compensable "hours worked" within the meaning of the FLSA, and that the time spent performing these tasks is *de minimis* and, therefore, not compensable time. If these defenses were to succeed, it would dispose of all of the Opt-In Plaintiffs' claims. Consequently, there is sufficient evidence to confirm that final certification of the collective, for purposes of settlement only, is warranted.

### C.     The Court Should Approve The Collective Action Settlement

As noted above, the Court can approve an FLSA settlement if it finds that the settlement was the result of contentious arm's length negotiations, which were undertaken in good faith by counsel, and that serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.

The settlement in this case meets the standard for approval. Counsel for the Parties were able to discuss the merits of their respective positions on several occasions. (Moyle Dec. at ¶ 11). Plaintiff also shared her damages calculations with Defendant, and counsel for each Party was able to debate the assumptions used to calculate the alleged damages. (*Id.*). It was only after these discussions and the exchange of several settlement proposals that the settlement agreement was reached. (*Id.*). Thus, the Agreement was clearly the result of contentious arm's length negotiations, undertaken in good faith.

It is also clear that serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive

litigation. As described above, the Parties dispute whether the alleged unpaid work at issue in this case constitutes compensable "hours worked" under the FLSA. (Moyle Dec. at ¶ 12). Beyond that, the Parties also dispute whether the two-year limitations period for non-willful violations of the FLSA or three-year limitations period for willful violations applies, and whether Plaintiff and the Collective would be entitled to liquidated damages if they were to prevail on the merits. (*Id.*). If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling, with no guarantee of any future recovery by Plaintiff and the Collective. (*Id.* at ¶ 13).

Further, as described above, Defendant raises defenses to Plaintiff's claims, and the outcome of those defenses is uncertain. (Moyle Dec. at ¶ 14). Accordingly, if this case is not settled, it is possible that the Collective would receive no compensation or, if they do receive compensation, it will be after protracted litigation, likely also involving appeals. (*Id.*). By settling the case at this stage of the litigation, the Parties and participating Collective members bypass the inherent risks of litigation and achieve finality on this matter. (*Id.*).

It must also be noted that, under the settlement, each member of the Collective will receive compensation for approximately 30 minutes of work per week, according to Plaintiff's counsel's calculations. (Moyle Dec. at ¶ 15). Thus, the settlement reflects a reasonable compromise of disputed issues, and each participant will receive significant compensation for their alleged injury. As such, it is clear that this settlement is not a mere waiver of statutory rights brought about by an employer's overreaching. Accordingly, the Agreement meets the standard for settlement, and should be approved.

C.      **The FLSA Service Award Is Proper and Reasonable.**

The Agreement calls for a service payment to Plaintiff in the amount of $750. Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Gallant*, 2020 U.S. Dist. LEXIS 77857, at *10. Here, Plaintiff took the risk of filing the action, had numerous discussions with her attorneys regarding the facts of the case, completed written discovery, and actively participated during the litigation and negotiation of the settlement. (Moyle Dec. at ¶ 16). Without her, there would be no recovery by the collective. Thus, the Service Award is reasonable and should be approved.

D.      **The Attorneys Fees and Expenses to Plaintiff's Counsel for the FLSA Claims Are Proper and Reasonable.**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).  Here, the Agreement calls for a payment to Plaintiff's Counsel in the amount of $11,666,67, representing one third of the total settlement. As this Court recently held, a "request of one-third of the amount of the Fund is in line with terms regularly approved by this and other federal district courts in our circuit." *Gallant*, 2020 U.S. Dist. LEXIS 77857, at *11 (S.D. Ind. May 4, 2020). "Additionally, we are aware that lawyers practicing employment law in this district and circuit routinely contract for fees equaling one-third of the overall recovery amount." *Id.*

Plaintiff's counsel agreed to accept this case on a contingency basis, in exchange for payment of one third of any recovery. (Moyle Dec. at ¶ 17). Plaintiff's Counsel also advanced all litigation fees, costs and expenses. (*Id.*). In doing so, Plaintiff's Counsel took the risk that they

may invest substantial time and resources into this case, and end up with nothing. (*Id.*). The fact

that this "fee structure was agreed upon at the outset of this litigation before the amount of the final

recovery was set" reinforces the fact that it is a fair award, and should be approved. *Gallant*, 2020

U.S. Dist. LEXIS 77857, at *11.

Finally, the Agreement calls for Plaintiff's Counsel to be awarded $5,836.49 as

reimbursement for out-of-pocket expenses. These expenses include $5,096.43 Plaintiff's Counsel

paid to a third-party administrator for mailing out notice to potential opt-in plaintiffs and tracking

the responses. (Moyle Dec. at ¶ 18). The expenses also include the filing fee, the cost of serving

the Complaint and summons, and miscellaneous postage costs to opt-in plaintiffs. (*Id.*). As these

expenses were incurred by Plaintiff's Counsel in the prosecution of this case, and were necessary

to litigate and prosecute this lawsuit, the reimbursement to Plaintiff's Counsel of this amount

should be approved. *See, e.g., Gallant*, 2020 U.S. Dist. LEXIS 77857, at *11-12.

## III.    CONCLUSION.

For the foregoing reasons, the Parties respectfully request that this Court:

1. Find that Plaintiff is similarly situated to the Opt-In Plaintiffs that joined this case;

2. Approve the Parties' Collective Action Settlement Agreement and Release ("Agreement"), attached as Exhibit 1, as a final, fair, reasonable, adequate and binding release of claims;

3. Approve the requested Service Award to Representative Plaintiff;

4. Approve Plaintiffs' request for attorneys' fees and costs; and

5. Dismiss this case with prejudice.

A proposed Order is attached as Exhibit 3.

Respectfully Submitted,

**NILGES DRAHER LLC**

/s/ *Jeffrey J. Moyle*
Jeffrey J. Moyle (OH 0084854)
1360 East 9th Street, Suite 808
Cleveland, OH 44114
Telephone:     (216) 230-2955
Facsimile:      (330) 754-1430
E-mail:            jmoyle@ohlaborlaw.com

Shannon M. Draher (OH 0074304)
7034 Braucher St NW, Suite B
North Canton, OH 44720
Telephone:     (330) 470-4428
Facsimile:      (330) 754-1430
Email:            sdraher@ohlaborlaw.com

*Counsel for Plaintiff*

**BOSE MCKINNEY & EVANS LLP**

/s/ *Gregory W. Guevara* (with permission)
Gregory W. Guevara (16728-49)
Philip R. Zimmerly (30217-06)
Tyler John Moorhead (34705-73)
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
Telephone:     317-684-5000
Facsimile:      317-684-5173
Email:            pzimmerly@boselaw.com
                     gguevara@boselaw.com
                     tmoorhead@boselaw.com

*Counsel for Defendant*